1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  ROBERT GEORGE JEFF, III, | )  Case No.: 1:10-cv-01510-JLT |
| 12       Petitioner, | )  ORDER DENYING FIRST AMENDED PETITION |
| 13       v. | )  FOR WRIT OF HABEAS CORPUS (Doc. 14) |
| 14  MATTHEW CATE, Warden, et al., | )  ORDER DIRECTING CLERK OF COURT TO |
| 15       Respondents. | )  ENTER JUDGMENT AND CLOSE FILE |
| 16 | )  ORDER DECLINING TO ISSUE CERTIFICATE |
| 17 | )  OF APPEALABILITY |

18          Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas

19  corpus pursuant to 28 U.S.C. § 2254.  The parties have previously filed their written consent to the

20  jurisdiction of the Magistrate Judge for all purposes.  (Docs. 19 & 20).

21                              **PROCEDURAL HISTORY**

22          Petitioner is in custody of the California Department of Corrections and Rehabilitation after

23  having been convicted in Kings County Superior Court in 2008 of: (1) gross vehicular manslaughter

24  while intoxicated (Cal. Pen. Code § 191.5(a)); (2) driving under the influence of alcohol and causing

25  bodily injury to another (Cal. Veh. Code § 23153(a)); (3) driving while having .08 percent or more, by

26  weight, of alcohol in his blood and causing bodily injury to another (Cal. Veh. Code § 23153(b)); (4)

27  failure to stop at the scene of an injury accident (Cal. Pen. Code § 20001(a)); and (5) driving with a

28  license suspended or revoked for driving under the influence of a drug or alcohol (Cal. Pen. Code §

                                            1

14601.2(a).  (Doc. 25, Lodged Documents ("LD") 1).

Petitioner appealed to the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed Petitioner's conviction on February 19, 2009.  (LD 1).  Petitioner filed a petition for review in the California Supreme Court that was summarily denied on May 20, 2009.  (LD 2).

On July 22, 2010, Petitioner filed a habeas corpus petition in the Kings County Superior Court, seeking to exhaust certain additional claims.  This petition was denied on September 30, 2010.  (LD 21; 22).  Petitioner filed two subsequent state habeas petitions in the California Supreme Court, both of which were denied.  (LD 23; 24).

On August 18, 2010, Petitioner filed the instant petition, raising six grounds for relief, and requesting a stay and abeyance until Petitioner could exhaust the unexhausted claims in the petition.  (Doc. 1). On October 4, 2010, the Court granted Petitioner's request for a stay.  (Doc. 5).  On August 16, 2011, Petitioner notified the Court that all of his claims were fully exhausted.  (Doc. 12).  On September 21, 2011, Petitioner filed the instant first amended petition.  (Doc. 14).  On January 13, 2012, the Court ordered the stay lifted and directed Respondent to file a response to the first amended petition.  (Doc. 15).  On March 14, 2012, Respondent filed an Answer.  (Doc. 24).  Petitioner filed his Traverse on May 14, 2012.  (Doc. 30).   Respondent concedes that all grounds for relief in the petition have been fully exhausted.  (Doc. 24, p. 8).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

At approximately 8:30 a.m. on August 19, 2005, a Lexus vehicle was observed traveling at a high rate of speed on a roadway in Hanford that ran alongside a canal. The driver was unable to negotiate the "S" curved road. The Lexus traversed the canal in a counter clockwise motion. Its front end impacted with the canal's east bank, followed by the passenger side. At some point, the vehicle overturned. It came to rest right side up on the sloped east canal bank. Witnesses called for emergency services and went to the scene to assist. Three people were in the Lexus when the accident occurred: appellant, Robert Barrios (Barrios) and Tony Jeff (Tony).

Allan McCain saw a cloud of dust and then noticed the Lexus on the canal bank. He reached the scene about five minutes after the accident. Tony was flailing in the canal trying to stand up and Barrios was floating face down in the water. McCain pulled Barrios's head out of the water and held onto him to make sure that he did not slide back into the water.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

About three minutes later, McCain heard wrestling noises emanating from inside the Lexus and then heard a splash. He saw appellant coming from around the passenger side of the Lexus. Appellant had a big cut on his forehead and a bloody face. McCain asked appellant if he was okay. Appellant replied, "I have to go, I'm on parole." McCain said, "[Y]ou are hurt pretty bad, you need to stay." Appellant replied, "I'm on parole." McCain told appellant that it was "okay, it was just an accident. You are not going to be in trouble." Appellant kept repeating that he was on parole and he had to go. McCain asked appellant who was driving. Appellant said, "I was, but I got to go, I'm on parole." Appellant began to walk off. McCain asked appellant if he could at least help him pull Barrios fully out of the canal. Appellant did so. Then he told McCain to "take care of both of them and he had to go." Appellant "started stumbling off north bound along the east side of the canal." When police officers arrived, McCain told "them that another person was hurt really bad and he was walking this direction and he said he was the driver."

Highway Patrol officer Chris Maselli heard the radio broadcast stating that appellant had fled. Maselli decided to search for appellant. He noticed another officer standing near appellant. Maselli joined the officer. Appellant appeared angry and agitated. He flailed his arms, yelled and swore. Appellant shouted "for us to shoot him." Appellant was apprehended by the officers. He had a visible laceration across his forehead and his head and hair were covered in blood. Appellant's speech was slurred and "[h]e was going through mood swings, which is consistent with being under the influence." He had a "very strong [odor of alcohol] on his breath and person."

Appellant was taken to the hospital, where he gave a statement to Maselli. Appellant "[s]tated that he was walking down the canal bank, did a suicide 360 and fell down and when he fell down, he hit his head, stated he was not in the collision." Appellant said he was injured by falling onto the dirt canal bank and "claimed he was never in any kind of collision."

Maselli performed two breathalyzer tests on appellant. The results showed blood alcohol concentration levels of .185 percent and .182 percent. A blood sample was taken from appellant, tested and found to have a blood alcohol concentration level of .19 percent.

Barrios died at the hospital. The cause of death was respiratory failure resulting from multiple blunt force trauma to the chest. Also, Barrios sustained cranial swelling, internal injuries, a pelvic fracture, lacerations on his right arm, a torn groin, abrasions on his left hip, and bruising on the right side of his body.

Appellant sustained a laceration on his head and a laceration on his left knee.

Tony sustained a laceration on his right cheek and a seat belt abrasion on the right side of his neck.

Photographs were taken of the scene, the damage to the Lexus and the injuries sustained by its occupants. Maselli noticed blood on the headrest of the driver's seat of the Lexus and saw that a strand of long hair was stuck on the blood. At the time of the accident, both Tony and Barrios had shaved heads and appellant had long hair. Maselli took the headrest into custody and sent it to the Department of Justice for testing. The blood on the headrest was swabbed and DNA tested. The test identified appellant and eliminated Barrios as a possible source of the sample. The criminalist who performed the DNA test was not provided with a sample of Tony's blood.

Based on damage to the Lexus and the injuries sustained by its occupants, Maselli opined that appellant was the driver, Barrios sat in the front passenger seat and Tony sat on the right side of the rear seat. Appellant and Tony had their seat belts buckled when the accident occurred. Barrios ejected from the Lexus through the right front window. Maselli concluded that

3

appellant was the driver based on the relatively minor injuries he sustained and the blood and strand of hair found on the driver's seat headrest.

Appellant's defense was based on the premise that he was a passenger in the Lexus when the accident occurred. Appellant testified that he was drinking the night before the accident and he continued drinking at Trina Alaniz's house when he awakened the next morning. He went with Barrios and Tony in the Lexus to buy some more beer. Appellant testified he was sitting on the front passenger seat and Barrios was driving. He started to blackout after they left the house and does not remember anything until he saw a scared look on Barrios's face; the next thing appellant remembers is a person telling him that help is on the way. Appellant testified that the police told him that he was the driver and he repeatedly denied it. Appellant admitted that he lied to the police when he told them that he was not involved in the accident. He also admitted two prior drunk driving convictions and that his driver's license was suspended when the accident occurred. Appellant also admitted that despite having a suspended license, he still drove occasionally. Finally, appellant admitted that at times he drove other people's cars.

Appellant's aunt, Melissa Contreras, and his friend, Steven Thomas, testified that on the morning of the accident a group of people, including appellant, Barrios and Tony, were all drinking beer and socializing outside of Trina Alaniz's house. Around 8:00 a.m., appellant, Barrios and Tony left in the Lexus to buy some more beer for the group. Barrios got into the driver's seat; appellant sat on the front passenger seat; Tony sat on the back seat behind appellant.

Jennifer Barrios (Jennifer), who was Barrios's mother and is appellant's aunt, testified that Barrios was the primary user of the Lexus even though he did not have a valid driver's license.

Celia Hartnett gave expert accident reconstruction testimony for the defense. She was unable to examine the Lexus because it was sold at auction in August 2005 and crushed for scrap metal in June 2006. Because she could not examine and analyze the interior of the Lexus, she was unable to determine who drove the vehicle. Hartnett testified that it would be speculative to make conclusions concerning the positions of appellant, Barrios and Tony in the Lexus based on photographic evidence of the damage to the Lexus and the physical injuries sustained by its occupants.

(LD 1, pp. 2-6).

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

4

Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams, 529 U.S. at 409).  In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.  As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

5

unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction. <u>Richter</u>, 131 S.Ct. at 786, quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment). The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." <u>Richter</u>, 131 S.Ct. at 787-788. Put another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. <u>Davis v. Woodford</u>, 384 F.3d at 637, citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. at 520; <u>Jeffries v. Wood</u>, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." <u>Id.</u> ; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), <u>cert.denied</u>, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief: (1) denial of Petitioner's Trombetta motion violated his right to federal due process; (2) the trial court erred denying Petitioner's new trial motion based on Trombetta grounds; (3) the trial court erred in denying Petitioner's motion for new trial based on newly discovered evidence; (4) the failure to arraign Petitioner in a timely manner under California and federal law violated Petitioner's due process rights; (5) failure to afford Petitioner a timely preliminary hearing violated his due process rights; and (6) ineffective assistance of trial counsel based upon counsel's failure to conduct a meaningful pre-trial investigation. (Doc. 14).

A.  Denial Of Petitioner's Pre-Trial Trombetta Motion.

Petitioner first contends that the trial court denied Petitioner his federal due process rights in denying Petitioner's pre-trial Trombetta motion.  This contention is without merit.

1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

**I. Failure to preserve the Lexus did not infringe appellant's due process right.**

**A. Facts**

The Lexus was impounded by the California Highway Patrol on the day of the accident. It was released for sale by the California Highway Patrol on August 30, 2005; it was sold at auction on this date to an auto salvage company. The Lexus was transferred to two other owners and in June 2006 it was stripped of component parts and crushed for scrap metal.

On October 18, 2005, charges were filed against appellant. He was arraigned on August 17, 2006. Ken Brock was immediately listed as counsel of record. The preliminary hearing was held on September 6, 2006; Maselli was the only witness. Appellant's first informal request for location of the Lexus was made in October 2006.

On July 20, 2007, appellant filed a pretrial motion asserting that release from impound and sale of the Lexus violated Trombetta. He sought dismissal of the case or suppression of all DNA evidence against him and suppression of Maselli's observations and opinions. In his moving papers, appellant primarily focused on the contention that the interior of the vehicle contained numerous observable and testable blood stains in various locations and these stains were potentially "exculpatory or incriminatory nature." Appellant also mentioned that the respective positioning of the driver and passenger seats had evidentiary value.

Appellant supported the motion with three declarations authored by forensic scientists who were contacted by defense counsel. The first declaration was authored by the defense's accident reconstruction expert, Celia Hartnett. She declared that she recommended to defense counsel that various tests be performed on the interior of the vehicle to establish the driver's identity and positions of the three occupants when the accident occurred. "Due to the fact that the

vehicle was destroyed before our staff had an opportunity to perform any of these examinations, significant physical evidence was lost that may have had the potential to either positively identify the driver, or to positively place [appellant] in a position in the vehicle other than the driver's seat." The second declaration was authored by Robert Jess, a senior forensic scientist. He declared that if the Lexus "had not been destroyed, further examination could have been conducted by the Defense to aid in determining the location of each occupant of the vehicle at the time of the incident. The destruction of the vehicle "caused the loss of significant physical evidence, which might have otherwise had potential reconstruction value. [Boldface and italics omitted.]" The final declaration was authored by Laurie Jennings, a biological screening and DNA expert. She declared that "[w]ith a properly and professionally conducted probe of the vehicle, the positions of each of the three involved individuals may have been determined. Due to the fact that the vehicle was destroyed before I had an opportunity to perform my own examinations, significant physical evidence was lost which might have otherwise had potential reconstruction value."

The People opposed the motion, arguing that the Lexus did not contain material, exculpatory evidence that was apparent before its destruction. Since appellant denied being involved in the accident, the additional blood evidence inside the Lexus was potentially incriminating and did not have apparent exculpatory value. In any event, because appellant climbed from the wreckage through the passenger side, his blood would be found throughout the cabin. Also, appellant did not establish bad faith.

The motion was denied after hearing. The court determined there was no evidence of bad faith on the part of the individuals responsible for investigation of the accident and storage of the Lexus. Further, there was no evidence showing that the failure to maintain custody and control of the Lexus after the initial investigation was done intentionally for the purpose of impeding preparation of a defense. Their decisions concerning investigation of the accident and the storage of the vehicle appeared to be reasonable and appropriate under the circumstances. The court also determined it would not have been reasonably foreseeable to the investigating officers that other blood sites in the vehicle would be exculpatory or of critical importance. The evidence that might have been obtained from additional testing would have been ambiguous. The presence of blood in other sites within the Lexus would not significantly diminish the probative value of the blood and hair found on the headrest because appellant was seen crawling from the car.

**B. The pretrial <u>Trombetta</u> motion was properly denied.**

<u>Trombetta, supra</u>, 467 U.S. 479 and <u>Arizona v. Youngblood</u> (1988) 488 U.S. 51 (<u>Youngblood</u>) establish the standard for a federal due process claim arising from failure to preserve evidence. In <u>Trombetta</u>, the Supreme Court held that the preservation obligation is "limited to evidence that might be expected to play a significant role in the suspect's defense." (<u>Trombetta, supra</u>, 467 U.S. at p. 488, fn. omitted.) To meet the standard of constitutional materiality, the evidence at issue "must both possess an exculpatory value that was apparent before the evidence was destroyed" and it must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (<u>Id</u>. at p. 489.) In <u>Youngblood</u>, the Supreme Court determined that the state's responsibility is further limited when the defendant's challenge is to "the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." (<u>Youngblood, supra</u>, 488 U.S. at p. 57.) In such a case, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process...." (<u>Id</u>. at p. 58.)
In California state courts, the <u>Trombetta</u> and <u>Youngblood</u> standards are applied together. If the evidence has apparent exculpatory value, then the state has a duty to preserve it and loss or destruction of this evidence infringes the defendant's due process right, even if the police acted in good faith. When the evidence is merely potentially useful to the defense, the state's

9

responsibility is more limited. In such a case, bad faith must be shown to prove a denial of due process. (People v. Roybal (1998) 19 Cal.4th 481, 509-510 (Roybal).) If the defendant demonstrates that significant exculpatory evidence was lost or establishes bad faith in connection with the loss of potentially useful evidence, the trial court has discretion to impose appropriate sanctions. (People v. Medina (1990) 51 Cal.3d 870, 894.) On review, an appellate court "must determine whether, viewing the evidence in the light most favorable to the superior court's finding, there was substantial evidence to support its ruling." (Roybal, supra, 19 Cal.4th at p. 510.)

**i. The Lexus did not contain evidence having an exculpatory value that was apparent when the vehicle was released from impound and sold.**

We agree with the trial court that the Lexus did not contain evidence having an exculpatory value that was apparent before the vehicle was released from impound and sold in August 2005. Appellant gave a statement on the day of the accident denying any involvement in the accident and stating that he was injured in a fall. This was a rollover collision and McCain heard appellant wrestling around inside the Lexus and climb out through the passenger side of the vehicle. McCain told police officers that appellant admitted being the driver. Therefore, additional fingerprints or blood evidence matching appellant's DNA type anywhere inside the Lexus would have been inculpatory in the sense that it would have tended to disprove appellant's statement that he was not involved in the accident and to support McCain's statement that he saw appellant climb out of the vehicle. Furthermore, the three defense experts merely averred that analysis and testifying of blood, fingerprint and positioning evidence contained inside the Lexus might have benefitted the defense. The experts did not aver that such evidence necessarily would have been exculpatory or have supported appellant's trial defense that he was a passenger. Such a pronouncement would have been highly speculative. It is equally likely that additional evidence derived from the Lexus would have provided further proof that appellant was the driver. In sum, the blood, fingerprint and positioning evidence that could have been obtained from the Lexus would have opened avenues of investigation that might have led in any number of directions adding to the body of circumstantial evidence in this case. Thus, the Lexus did not meet the constitutional standard of materiality established in Trombetta.

**ii. Appellant did not establish bad faith.**

Appellant also failed to establish bad faith within the meaning established in Youngblood. Bad faith is proven when one shows evidence of official animus toward the defendant or a conscious effort to suppress evidence. (Trombetta, supra, 467 U.S. at p. 488.) In this case, neither animus nor conscious suppression was shown. There was no reason for investigators to believe in August 2005 that there would be a conflict over the positions of the occupants of the vehicle because appellant denied being in an accident and McCain told police officers that appellant admitted being the driver. The investigators were not required to anticipate all possible lines of defense that might be advanced at trial. Furthermore, no evidence was presented demonstrating that the release from impound or sale of the Lexus was conducted in a manner inconsistent with standard procedures. Although appellant asserts that the registered owner of the Lexus did not receive advance notice of the sale, he did not offer any support for this assertion in his moving papers or testimonial evidence at the pretrial hearing. Also, he did not offer any proof that notice customarily is provided to registered owners when the vehicle has been declared a total loss by the insurer.

As in People v. McNeill (1980) 112 Cal.App.3d 330 (McNeill), this is a case that is "less one of failure to preserve evidence than failure to gather and collect everything which, with fortuitous foresight, might prove useful to the defense." (Id. at p. 338 [not required to gather and retain fingernail scrapings from decedent].) The People are not obligated "'to foresee everything the fertile mind of the defense counsel might wish to examine.'" (Ibid.) Since

appellant failed to establish constitutional materiality or bad faith, the pretrial <u>Trombetta</u> motion was properly denied. (<u>McNeill, supra</u>, 112 Cal.App.3d at p. 338; <u>see also People v. Cooper</u> (1979) 95 Cal.App.3d 844, 850-851 [not obligated to handle plastic bag containing heroin with gloves or to test it for fingerprints].)

(LD 1, pp. 6-11).

        2. <u>Federal Standard</u>.

Due process standards require that criminal defendants be afforded a meaningful opportunity to present a complete defense, including "what might loosely be called the area of constitutionally guaranteed access to evidence." <u>United States v. Valenzuela–Bernal</u>, 458 U.S. 858, 867 (1982). It is a violation of a criminal defendant's right to due process when law enforcement agencies fail to preserve evidence that "possess [es] an exculpatory value that was apparent before the evidence was destroyed and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably attainable means." <u>California v. Trombetta</u>, 467 U.S. 479, 489 (1984). Due process only requires preservation of "evidence that might be expected to play a significant role in the suspect's defense." <u>Trombetta</u>, 467 U.S. at 488. The exculpatory value of such evidence must have been apparent before the evidence was destroyed, and the defendant must also be unable to reasonably obtain comparable evidence. <u>Id</u>. at 489.

However, to protect the courts from the "treacherous task of divining the import of materials whose contents are unknown," unless a criminal defendant can show bad faith on the part of law enforcement, "failure to preserve potentially useful evidence does not constitute a denial of due process." <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988). "Bad faith" consists of official animus towards [the accused] or a conscious effort to suppress exculpatory evidence." <u>Trombetta</u>, 467 U.S. at 488. "The presence or absence of bad faith by [law enforcement] for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." <u>Youngblood</u>, 488 U.S. at 56, n. *.

        3. <u>Analysis</u>.

As indicated in the excerpt of the 5th DCA's decision quoted above, the state appellate court concluded that Petitioner had failed to establish either that the vehicle had an exculpatory value apparent at the time it was released and eventually destroyed or that the State acted with bad faith in

permitting the release of the vehicle.  The state court noted that Petitioner initially denied to police that he was involved in any car accident, contending instead that he had injured himself in a fall.  Contradicting Petitioner was McCain, an independent eyewitness and bystander, who heard Petitioner "wrestling" around in the car immediately after the accident, before exiting the passenger-side window and then admitted to McCain that he had been the driver.

At trial, Petitioner's defense changed from not being involved in the accident at all to being merely a passenger.  At that point, however, the vehicle had already been released and sold.  The 5th DCA pointed out that, during the initial investigation, police obtained samples of Petitioner's hair and blood from the interior of the car,[2] contradicting Petitioner's initial claim that he was not involved in the accident in any way, and establishing that he was, at the very least, within the passenger compartment of the car when the accident occurred.  It was not until trial, long after the car had been released and sold, that Petitioner changed his trial strategy to one of being involved in the accident, but only as a passenger.  However, at the time the Lexus was released and sold, Petitioner's claim of not being involved in the accident in any way was the defense's operative theory; hence, at that point, the vehicle did not have any apparent exculpatory value beyond that evidence, already obtained, which placed Petitioner in the vehicle, i.e., his hair and blood, and in the driver's seat, i.e., McCain's testimony.  Thus, there would not be, as the state court recognized, any apparent exculpatory value to the defense in retaining the vehicle for further testing.

Indeed, none of the three defense experts could say with any certainty that <u>any</u> exculpatory evidence could have been garnered from the vehicle had it been retained by the police.  At most, the experts opined in their declarations that exculpatory evidence "might" have been obtained upon further testing.  However, as the state court observed, it would be equally probable that inculpatory evidence would have been uncovered, given the clear weight of evidence that Petitioner was the driver.  Under <u>Trombetta</u> and <u>Youngblood</u>, a theoretical possibility of obtaining exculpatory evidence falls far below the standard of "apparent" exculpatory value.  Thus, the state court's analysis was

---

[2] To be precise, the forensic examination of the blood sample on the driver's headrest eliminated Barrios.  Tony Jeff was not tested; however, no one seems to contest the fact that he was seated in the back seat.  Both Tony and Barrios had shaved heads, while Petitioner had long hair, thus suggesting that the hair sample was from Petitioner, not the other two passengers.

1    objectively reasonable.

2        Moreover, the 5th DCA concluded that the state did not act with bad faith in releasing the

3    vehicle.  This, too, was an objectively reasonable conclusion under the facts in this record.  The state

4    court expressly noted that there "was no reason for investigators to believe in August 2005 that there

5    would be a conflict over the positions of the occupants of the vehicle because appellant denied being in

6    the accident and McCain told police officers that appellant admitted being the driver." The state court's

7    reasoning on this point is unassailable.  Since the exculpatory value of the vehicle to the defense was

8    not apparent at the time the Lexus was released, and in the absence of any other defense evidence of

9    bad faith, the state court's conclusion that no showing of bad faith had been made was justified.

10        As the United States Supreme Court has made clear, "habeas corpus is not to be used as a

11   second criminal trial, and federal courts are not to run roughshod over the considered findings and

12   judgments of the state courts that conducted the original trial and heard the initial appeals."  Williams,

13   529 U.S. at 383.  Here, it is evident that the state courts fully litigated the Trombetta issue, both at the

14   trial level and on appeal, and were in agreement that no constitutional violation had occurred under the

15   appropriate state and federal standard.  Petitioner has presented no argument in these proceedings and

16   pointed to no evidence or circumstance that would justify this habeas court running "roughshod" over

17   the considered findings and rulings of the state courts in this case.

18        B.  Denial of Petitioner's Motion For New Trial Based Upon Trombetta.

19        Petitioner next contends that denial of his motion for a new trial based upon Trombetta

20   grounds was error.  This contention is also without merit.

21            1.  The 5th DCA's Opinion.

22   The 5th DCA rejected Petitioner's claim as follows:

23   At trial, Jennifer testified that she was the registered owner of the Lexus and that no one
     contacted her between "August the 18th and August 20th" to tell her that the car was going to
24   be released from impound and sold for salvage.

25   Appellant filed a motion for new trial that was based on an unrelated claim of newly
     discovered evidence (see discussion part II). During an oral argument on this new trial motion
26   that was conducted on February 11, 2008, defense counsel asserted the trial was unfair from
     the start because the state destroyed the Lexus. During his responsive argument, the prosecutor
27   said, "The People didn't destroy that car. The family of the defendant destroyed that car, not
     the People." Defense counsel replied that the prosecution misled the defense for nine months
28   by "telling us that that car did exist." The court stated that it did not remember "the evidence of

13

the state destroying that car" and it did not see how or why the state could destroy the Lexus "without any input or involvement by the owner or insurance company." Defense counsel replied that the former owner of the Lexus was present in the courtroom. The court refused "to go into that issue today. That has nothing to do with the motion before this court."

Appellant contends that the court's refusal to reconsider the Trombetta issue constituted an injustice that deprived him of a substantial right. We disagree. Because the point orally raised at the new trial motion lacked merit, the trial court's refusal to consider it is harmless and does not require remand. (People v. Braxton (2005) 34 Cal.4th 798, 816-817 [overruling People v. Sarazzawski (1945) 27 Cal.2d 7].)

The Trombetta claim was fully litigated before trial and it was decided on the merits. Appellant's written new trial motion was based on other grounds. Although defense counsel did not orally articulate a coherent legal argument based on the applicable standard, the substance of his remarks on February 11 implied that he believed the state had not acted in good faith when the Lexus was released from impound and sold. If this point had been considered on the merits, it would have failed.

As previously explained, bad faith is established when there is evidence of official animus toward the defendant or a conscious effort to suppress evidence. (Trombetta, supra, 467 U.S. at p. 488.) Appellant did not offer any evidence showing that the release from impound and sale of the Lexus was conducted in an irregular manner. The Lexus was declared to be a total loss by the insurer. Jennifer's testimony that she did not receive advance notice of the sale would not have been sufficient to support a finding of bad faith because appellant did not offer any proof indicating that notice is customary when a vehicle is declared to be a total loss. Also, appellant did not offer any proof that the prosecution intentionally misled the defense about the possible existence of the Lexus; an honest mistake is not equivalent to bad faith. In any event, since the Lexus was destroyed in June 2006 and appellant first requested information about the Lexus in October 2006, appellant cannot demonstrate tangible prejudice arising from confusion about the possible existence of the vehicle.

Thus, we find the trial court's refusal to reconsider the Trombetta claim was not an abuse of discretion; appellant was not prejudiced or deprived of any substantial right.

(LD 1, pp. 11-13).

### 2. Analysis.

As Respondent correctly contends, Petitioner fails to state a federal claim.  By contending that the state court violated state law in denying his motion for a new trial, i.e., abused its discretion, he does not allege a specific violation of the Constitution or federal law.  His claim is entirely one of state law, and generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348–49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").  Accordingly, the claim must be rejected on that basis alone.

14

However, even considered on its merits, such a claim is fatally flawed.  As the 5th DCA observed, Petitioner's written new trial motion was based upon newly discovered evidence, not destruction of evidence.  It was only during the hearing itself that defense counsel appeared to articulate a <u>Trombetta</u> claim as grounds for a new trial.  The trial court essentially refused to hear that claim.  Now, Petitioner's argument that such a refusal was an abuse of discretion cannot stand.  As discussed previously, the state court's rejection of Petitioner's <u>Trombetta</u> claim on its merits was objectively reasonable because Petitioner had not established that the Lexus had a readily apparent exculpatory value to the defense at the time it was released and sold, nor had he established bad faith on the part of the State in releasing the car.  Given those circumstances, Petitioner cannot show that the trial court's refusal to consider the claim post-trial was an abuse of the trial court's discretion. Petitioner has not established that he suffered any constitutional violation as a result of the sale of the vehicle, he had a full and fair pre-trial hearing on the issue, and the trial judge's refusal to permit Petitioner a second bite of the apple in his new trial hearing was not unreasonable.[3]

C.  <u>Denial Of Petitioner's Motion For New Trial Based On Newly Discovered Evidence</u>.

Next, Petitioner claims that the trial court erred in denying his motion for new trial based on newly discovered evidence.  Again, this contention lacks merit.

1.  <u>The 5th DCA's Decision</u>.

The 5th DCA rejecting Petitioner's claim as follows:

**A. Facts**

Appellant was on parole when he committed the current offenses. On September 19, 2005, a probable cause hearing for revocation of appellant's parole based on offenses arising from the automobile accident was conducted at Kern State Prison. The written summary of revocation hearing and decision (the summary) reflects that appellant was represented at this hearing by Kim Fowler. It also reflects that Contreras and Tony were subpoenaed by the defense to appear as witnesses. However, neither Contreras nor Tony could be cleared for entry into Kern State Prison. The summary does not indicate why they could not be cleared. Also, it does not indicate that anyone submitted a written statement. On September 23, 2005, appellant's parole was revoked and he was returned to custody for 12 months.

At trial, Contreras testified as a defense witness. In relevant part, she testified that she did not give any statements to law enforcement. Her credibility was attacked by the prosecutor, who

---

[3] To the extent that this claim is premised upon the purported destruction by the State of written statements authored by Ms. Contreras and Tony Jeff at Petitioner's parole revocation hearing, rather than on the release, sale, and destruction of the Lexus, such contentions are considered in the next claim, *infra*.

argued that she was biased and only provided information when it benefited the defense.

Tony was not called as a witness by either side.

Appellant filed a motion for new trial based on a claim of newly discovered evidence. Therein, he asserted that Contreras and Tony each submitted a handwritten statement at the parole revocation hearing and these statements contained material, exculpatory evidence. Appellant's trial counsel, Ken Brock, learned about the creation of these statements after the verdict was entered.

Appellant submitted supporting declarations from Contreras and Tony. They averred that after they could not be cleared for entry at Kern State Prison, they each wrote a handwritten statement and gave it to a uniformed officer. Contreras declared that she wrote Barrios was driving when the three men left to buy beer. She forgot about writing this statement but spontaneously recalled the event about two months after the trial ended. Due to her memory lapse, she did not tell anyone about it before trial. Tony declared that he wrote Barrios was driving when the accident occurred. Tony declared that when he was interviewed by Brock, he responded "No" to Brock's query whether he "had made any statement to anybody else about the accident" because he thought the question was limited to "another police officer at that time."

Appellant also submitted a supporting declaration authored by Brock. Brock declared that he interviewed Contreras and Tony as part of his trial preparations. Neither of them told him about the handwritten statements. After interviewing Tony, Brock made the strategic decision not to call Tony as a defense witness because Tony told police officers that he did not know who was driving when the accident occurred. Brock averred that if he had known about the written statements, he would have called Tony as a defense witness and used Contreras's written statement to bolster her credibility. Brock also declared that he contacted Fowler. She told him "there were witnesses who were excluded, but she does not recollect if written statements from these persons were provided." Fowler also said that she does not know if she ever possessed written statements authored by Contreras and/or Tony. She routinely destroys her parole revocation hearing files every six months. If she possessed such statements, she had destroyed them.

Finally, appellant submitted a letter authored by a representative of the Board of Parole Hearings responding to a "request ... concerning the hearing held on September 23, 2005 [sic ]." The letter states that transcripts are not produced for revocation hearings and audio tapes serve as the official record of the hearing. The policy of the Board of Parole Hearings is to maintain a copy of the parole revocation hearing record for one year from the hearing date. After one year, the tapes and all documentation are purged.

The People opposed the motion, arguing there was no credible proof that the written statements ever existed. Moreover, the evidence is neither new nor material.

The motion was denied after hearing. The court did not see "no basis to the defense claims that there's been any unfairness, or any denial of due process by the circumstances that are claimed to have surrounded [Contreras's] change of ... story...." It concluded that the new trial motion had "no basis in law or fact."

**B. Denial of the new trial motion was not an abuse of discretion.**

Penal Code section 1118 authorizes grant of a new trial based upon newly discovered evidence. The applicable standard is established:

16

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citations.]" (<u>People v. Turner</u> (1994) 8 Cal.4h 137, 212 (<u>Turner</u>).)

"'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.'" (<u>People v. Williams</u> (1988) 45 Cal.3d 1268, 1318.) The appellate court may base its affirmance of the trial court's decision solely on the unlikeliness of a different result on retrial. When it does so, it need not address the remainder of the listed factors. (<u>People v. Delgado</u> (1993) 5 Cal.4th 312, 329, fn. 7 (Delgado).)

In this case, the trial court acted well within its discretion in denying the new trial motion because it is not reasonably probable that admission of the newly discovered evidence would result in a more favorable result on retrial.

The credibility as well as the materiality of the newly discovered evidence is relevant. (<u>Delgado, supra</u>, 5 Cal.4th at p. 329.) "[I]t is settled that the offer of a witness, after trial, to retract his sworn testimony is to be viewed with suspicion ." (<u>In re Weber</u> (1974) 11 Cal.3d 703, 722.) In this case, there is no independent proof that the handwritten statements ever existed. Fowler does not recall if any written statements were created or provided to the hearing officer. Both Fowler and the Board of Parole Hearings destroyed their records of the hearing in accordance with their customary practice. Thus, testimony from Contreras and Tony-that, after being denied prison clearance to testify as defense witnesses at appellant's parole revocation hearing, they gave an unnamed officer a handwritten statement consistent with their trial testimony-would be uncorroborated. Without corroboration, reasonable jurors would give such testimony little weight.

Furthermore, Brock declared that the police reports indicated that Tony did not know who was driving. Two months later, at appellant's parole revocation hearing, Tony suddenly remembered that Barrios, the dead man, was driving. Yet Tony did not contact the police or the prosecution to provide them with this crucial piece of information. It is highly unlikely that a jury would believe exculpatory testimony from Tony that was inconsistent with his original statement to the police and was offered only to assist the defense.

Additionally, testimony from Contreras, i.e., that following entry of the verdict she spontaneously remembered creating a handwritten statement at appellant's parole revocation hearing, would not diminish the force of the prosecutor's point that she was biased and came forward only to benefit the defense. Contreras's credibility would not be substantially bolstered by uncorroborated testimony concerning a belatedly remembered prior consistent statement.

Most important, though, is the fact that the newly discovered evidence does not undermine or reduce the probative value of the People's proof that appellant was driving the Lexus when the accident occurred. McCain's testimony that appellant said he was the driver immediately following the accident was the single most important piece of evidence in this trial. McCain reported this statement to the police. He did not know appellant and had no reason to lie. McCain's testimony is bolstered by the hair and blood evidence found on the driver's headrest. Appellant's lie to Maselli about the source of his injuries and his denial that he was in an accident demonstrate a consciousness of guilt and undermine the credibility of his trial testimony. When the entirety of the circumstantial evidence is evaluated, it provides compelling proof that appellant was the driver.

17

Accordingly, we conclude there is not a reasonable probability of a different result on a retrial and uphold denial of the new trial motion. (Turner, supra, 8 Cal.4th at pp. 212-213 [upheld denial of new trial motion where different result not probable on retrial]; Delgado, supra, 5 Cal.4th at pp. 328-329 [same].)

(LD 1, pp. 13-18).

2. Federal Standard.

As Respondent correctly notes, Petitioner's claim that the trial court abused its discretion when it denied his new trial motion involves the application or interpretation of state evidence law, and, consequently, it is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68 (reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Smith v. Phillips, 455 U.S. 209, 221(1982); Langford, 110 F.3d at 1389 ("We accept a state court's interpretation of state law, ... and alleged errors in the application of state law are not cognizable in federal habeas corpus"). Even if Petitioner were attempting to characterize this state law claim as a federal constitutional claim, this is not sufficient to render it such. See, e.g., Cacoperdo, 37 F.3d at 507.

Regarding newly discovered evidence, such evidence is a ground for habeas relief only when it bears on the constitutionality of a petitioner's conviction and would probably produce an acquittal. Spivey v. Rocha, 194 F.3d 971, 979 (9th Cir.1999). Due process provides a defendant the right to present a defense by compelling the attendance and presenting the testimony of witnesses. Washington v. Texas, 388 U.S. 14, 18–19 (1967). However, it is well established that trial judges have the discretion to preclude evidence if its probative value is outweighed by other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Holmes v. South Carolina, 547 U.S. 319, 326 (2006). If the exclusion of certain evidence violates a petitioner's right to present a defense, habeas corpus relief can only be granted if the constitutional error was not harmless, that is, error that resulted in actual prejudice, or had a substantial and injurious effect or influence in determining the jury's verdict. Jackson v. Nevada, 688 F.3d 1091, 1104–1105 (9th Cir.2012), petition for cert. filed, 81 U.S.L.W. 3349 (U.S. Dec. 3, 2012) (No. 12–694) (citing Fry v. Pliler, 551 U.S. 112, 121–122 (2007) and Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). In determining whether the alleged error was harmless under Brecht, the court considers such factors as, "(1) the importance of the witness's

1    testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or

2    absence of evidence corroborating or contradicting the testimony of the witness on material points; (4)

3    the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's

4    case. Merolillo v. Yates, 663 F.3d 444, 455 (9th Cir.2011) (citing Delaware v. Van Arsdall, 475 U.S.

5    673, 684 (1986)).

6              3.  Analysis.

7         Based upon the foregoing authority, the Court concludes that Petitioner's claim is based

8    entirely on state law and, therefore, is not cognizable in federal habeas corpus proceedings.  California

9    law vests in the trial judge the authority and discretion to hear post-trial motions and correct trial

10   errors; however, there is nothing in this record to suggest that an error regarding newly discovered

11   evidence was committed; thus, the trial judge did not abuse his discretion.

12        In any event, Petitioner's claim would fail on the merits because the two pieces of "newly

13   discovered evidence," i.e., the recantation by Petitioner's aunt and the post-trial recollection of

14   passenger Tony Jeff, both to the effect that Petitioner was not the driver, are insufficient to meet the

15   high threshold for obtaining a new trial based on newly discovered evidence.

16        Petitioner's argument to the contrary, Ms. Contreras' recantation is not "newly discovered

17   evidence." A prosecution witness' subsequent recantation does not constitute "newly discovered

18   evidence" because trial cross-examination affords defense counsel the opportunity to discover and

19   reveal the motivation for and the alleged falsity of the witness' trial testimony. See Davis v. Blackburn,

20   789 F.2d 350, 352 (5th Cir.1986); see also People v. Parrison, 137 Cal.App.3d 529, 541(1982).

21   Similarly, the Ninth Circuit has held that, when a potential witness refuses to testify at a criminal trial

22   but later discloses evidence favorable to the defendant, the disclosure does not constitute "newly

23   discovered evidence."  United States v. Lockett, 919 F.2d 585, 591–92 (9th Cir.1990). Even if this

24   Court were to regard the aunt's recantation as "newly discovered evidence," the recantation would not

25   furnish a basis for federal habeas relief. In Townsend v. Sain, 372 U.S. 293, 317 (1963), the United

26   States Supreme Court stated:  "Of course, [newly discovered] evidence must bear upon the

27   constitutionality of the [habeas] applicant's detention; the existence merely of newly discovered

28   evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."

Several circuit courts have followed this directive in summarily denying habeas petitions predicated on evidence relevant merely to the guilt of a state prisoner. See Boyd v. Puckett, 905 F.2d 895, 896–97 (5th Cir.), cert. denied, 498 U.S. 988 (1990); Stockton v. Virginia, 852 F.2d 740, 749 (4th Cir.1988), cert. denied, 489 U.S. 1071 (1989) ("a habeas petitioner must show that the prosecutor or other government officer knew the testimony in question was false in order to prevail") (citations and quotations omitted); De Martino v. Weidenburner, 616 F.2d 708, 711 (3rd Cir.1980); Anderson v. Maggio, 555 F.2d 447, 451 (5th Cir.1977) (recantation of prosecution witness); Burks v. Egeler, 512 F.2d 221, 229–30 (6th Cir.), cert. denied, 423 U.S. 937 (1975) (perjury by trial witnesses does not merit habeas relief absent a showing of prosecutorial involvement in the perjury).

In the context of a motion under 28 U.S.C. § 2255, the Ninth Circuit has held that the existence of perjured trial testimony will not merit collateral relief unless "the prosecuting officials knew at the time such testimony was used that it was perjured." Marcella v. United States, 344 F.2d 876, 880 (9th Cir.1965), cert. denied, 382 U.S. 1016 (1966). However, the Ninth Circuit has stated: "Newly discovered evidence warrants federal habeas relief if it would 'probably produce an acquittal.'" Harris v. Vasquez, 913 F.2d 606, 626 (9th Cir.1990), citing Quigg v. Crist, 616 F.2d 1107, 1112 (9th Cir.), cert. denied, 449 U.S. 922 (1980); accord Gordon v. Duran, 895 F.2d 610, 614–15 (9th Cir.1990). The Ninth Circuit first made this observation in Quigg v. Crist, supra. The Quigg Court relied upon the Eighth Circuit's decision in Mastrian v. McManus, 554 F.2d 813, 822 (8th Cir.), cert. denied, 433 U.S. 913 (1977). Yet, the Mastrian Court stated:

> "Although the claim of newly discovered evidence relevant to the guilt of a state prisoner is generally not a ground for relief on federal habeas corpus [citing, inter alia, Townsend v. Sain, supra ] in the interests of judicial economy we believe it prudent to address the contention here."

Id. (emphasis added). Consequently, it appears uncertain whether courts within the Ninth Circuit may grant habeas relief based on newly discovered evidence relevant solely to the guilt of a state prisoner. Ibid.

In any event, this Court does not view Ms. Contreras' recantation as reliable. "The recanting of prior testimony by a witness is ordinarily met with extreme skepticism." United States v. Nixon, 881 F.2d 1305, 1311 (5th Cir.1989); see In re Weber, 11 Cal.3d 703 (1974); People v. McGaughran, 197

20

Cal.App.2d 6 (1961) (involving recantation of fourteen year old victim of attempted statutory rape); Iowa v. Tharp, 372 N.W.2d 280, 282 (Iowa App.1985) (involving recantation of fifteen year old stepdaughter/victim of sexual abuse); People v. Andrews, 360 Mich. 572, 104 N.W.2d 199, 201 (1960) (involving assertion by defendant's eleven year old daughter that she previously testified falsely because, inter alia, her father abused her mother).  The 5th DCA noted that, in light of the almost certain family pressures brought to bear on the aunt following Petitioner's conviction and lengthy prison sentence, see Iowa v. Tharp, 372 N.W.2d 280, 282 (Iowa App.1985) ("In cases of this type, where families are torn apart, there is great pressure on the family member to 'make things right'"); Commonwealth v. Thompson, 271 Pa.Super. 170, 412 A.2d 630 (1979) (court refused to overturn conviction of defendant for raping eleven year old stepdaughter who later recanted her trial testimony), Ms. Contreras' decision to change her testimony casts grave doubt on her credibility.  See Davis v. Blackburn, 789 F.2d 350, 352 (5th Cir.1986) (stressing importance of trial judge's evaluation of recanting witness' testimony); see also United States v. Brown, 417 F.Supp. 340 (E.D.Pa.1976).

By contrast, McCain was a disinterested bystander who merely happened to be present when the accident occurred and had no reason to lie.  McCain consistently repeated his claim that immediately after the accident, Petitioner emerged from the vehicle and admitted that he had been the driver.  In light of the corroboration of the aunt's trial testimony and the trial judge's evaluation of the aunt's recantation, this Court does not view her present recantation as credible.

Similarly, Tony Jeff's declaration, while not technically a recantation, suffers from similar characteristics that bear on reliability and credibility.  Tony Jeff did not testify at trial, although he was a passenger in the vehicle and would, it must be presumed, have knowledge of facts material to the legal issues in the trial.  The record is silent on why the defense did not choose to call Tony Jeff as a witness on behalf of Petitioner; however, the defense decision not to call Mr. Jeff, combined with his convenient "recollections" that Petitioner was also a passenger, not a driver, some months after the trial, do nothing to bolster Mr. Jeff's credibility.  Like Ms. Contreras, he is a close family member who, after learning that Petitioner was convicted and sentenced to a long prison term, would have every motivation to place the blame for the accident on the deceased victim, who could not be convicted or punished.

21

Based on the foregoing, the Court concludes that the state court adjudication rejecting Petitioner's claim was objectively reasonable. Habeas proceedings are about substance, not appearance. To justify habeas relief, there must be some articulable, substantive constitutional violation, not merely a collection of weakly supported allegations of impropriety by the trial judge.

The first amended petition alleges that the trial court's denial of the motion for new trial on newly discovered evidence rose to the level of a federal due process violation. However, Petitioner's broad assertion of a constitutional error does not transform what is in essence a state claim into a federal one. Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-89 (1996). Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion).

D.  Failure To Afford Petitioner A Timely Arraignment.

Petitioner also claims that his due process rights were violated when the state court failed to afford Petitioner a timely arraignment. This contention is without merit.

1.  The Superior Court's Decision.

The Superior Court rejected Petitioner's claim as follows:

Petitioner's claims as set forth in Sections V [untimely arraignment] and VI [untimely preliminary hearing] are based upon matters contained within the record, but which were not raised on appeal. Because the violations discussed in Sections V and VI of the petition arise from matters other than the right to the effective assistance of counsel, and could have been raised on appeal, they are barred. (In re Dixon (1953) 41 Cal.2d 756, 759.) In addition, the claims are barred as successive under In re Clark (1993) 5 Cal. 4th 750, 767,-768, and as untimely under In re Robbins (1998) 18 Cal.4th 770, 780-781.

(LD 22, p. 2).

2.  Federal Standard.

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 86-87(1977). As a general rule, federal courts "will not review a question of federal law

decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001); see Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Park v. California, 202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements . . . ."); see also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). This concept is commonly referred to as the procedural default doctrine, and is based on concerns of comity and federalism. Coleman, 501 U.S. at 730-32. If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

The mere occurrence, however, of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus. In order for the procedural default doctrine to apply and thereby bar federal review, the state court determination of default must be grounded in state law that is both *adequate* to support the judgment and *independent* of federal law. Ylst, 501 U.S. at 801; Coleman, 501 U.S. at 729-30; see also Fox Film Corp., 296 U.S. at 210. Put another way, the procedural default doctrine will apply only if the application of the state procedural rule provides "an adequate and independent state law basis" on which the state court can deny relief. Park, 202 F.3d at 1151, *quoting*, Coleman, 501 U.S. at 729-30.

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (*citing* Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (*quoting* Coleman, 501 U.S. at 735, 111 S.Ct. 2456)). "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at 1152 (*quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

To be deemed adequate, the state law ground for decision must be well-established and consistently applied.  Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.")(quoting Ford v. Georgia, 498 U.S. 411, 424, 111 S.Ct. 850 (1991)).  Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.'"  Id. at 377 (quoting Morales, 85 F.3d at 1392).

3.  Analysis.

Here, the state court found that Petitioner's claim was barred under three separate state procedural theories: (1) the claim could have been raised, but was not, in the direct appeal (Dixon), it was successive (Clark), and untimely (Robbins). As discussed below, all three are proper bases for barring Petitioner's claim in these proceedings.

a.  Dixon.

A citation to In re Dixon refers to California's procedural rule which provides that a California court, in a habeas corpus proceeding, will not review the merits of a claim if that claim could have been raised in a timely appeal but was not.  In re Dixon, 41 Cal.2d at 759 ("[I]n the absence of special circumstances constituting an excuse for failure to employ [the] remedy [of direct review], the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction"). See In re Harris, 5 Cal.4th 813, 823 (1993) (explaining In re Dixon rule). Despite the petitioner's failure to bring a claim on direct appeal from a conviction, a California court will hear the merits of case if the court finds one of four exceptions. The four exceptions to the Dixon bar are: 1) fundamental constitutional error; 2) a lack of fundamental jurisdiction by the trial court over the petitioner; 3) the trial court's acting in excess of jurisdiction; and 4) an intervening change in the law.  Fields, 125 F.3d at 763, quoting, In re Harris, 5 Cal.4th at 828-842.

Since the California Supreme Court's 1998 decision in In re Robbins, 18 Cal.4th 770, 811-812 & n. 32 (1998), the Dixon rule has been independent of federal law.  Park v. California, 202 F.3d 1146, 1152 (2000).  Since the California Supreme Court's 1993 decisions in In re Harris, 5 Cal.4th 813, 823

24

(1993) and In re Clark, 5 Cal.4th 750 (1993), the Dixon rule has been consistently applied, i.e.,

"adequate."  Park, 202 F.3d at 1152. Hence, any state court ruling procedurally barring a habeas claim

because the petition failed to raise that claim in his direct appeal, i.e., the Dixon rule, will be barred on

federal habeas review unless the petitioner can demonstrate (1) cause for the default and actual

prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of

justice.  Harris v. Reed, 489 U.S. 255, 262-63 (1989); Coleman v. Thompson, 501 U.S. 722, 750

(1989).

### b.  Clark.

It is the policy of California courts to "deny an application for habeas corpus which is based

upon grounds urged in a prior petition which has been denied, where there is no shown change in the

facts or the law substantially affecting the rights of the petitioner."  In re Clark, 5 Cal.4th, 750, 759

(1993).  Before assessing the merits of a second petition, California courts will first ask whether the

failure to present the claims underlying the new petition in a prior petition has been adequately

explained, and whether that explanation justifies the piecemeal presentation of the petitioner's claims.

In making this determination, the court will consider whether the facts on which the claim is based,

although only recently discovered, could and should have been discovered earlier.  Claims that are

based on a change in the law which is retroactively applicable to final judgments will be considered if

promptly asserted and if application of the former rule is shown to have been prejudicial.

Unjustified successive petitions will not be entertained on their merits absent facts

demonstrating a fundamental miscarriage of justice.  Id. at 775.  In non-death penalty cases, a

fundamental miscarriage of justice will have occurred if any of the following are demonstrated: (1) that

an error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error

no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually

innocent of the crime or crimes of which he was convicted; or (3) that the petitioner was convicted or

sentenced under an invalid statute.  Clark, 5 Cal.4th at 797-798.

### c.  Robbins.

The Superior Court's citation to In re Robbins reflects that the habeas petition was denied

because it was deemed untimely.  Walker v. Martin, 562 U.S. ——, ——,131 S.Ct. 1120, 1126 (2011)

("A summary denial citing…<u>Robbins</u> means that the petition is rejected as untimely.").  In <u>Martin</u>, the Supreme Court was faced with the issue of whether the California Supreme Court's denial of a habeas petition citing <u>In re Clark, supra</u>, represented an adequate procedural bar that prevented Martin's claims from being reviewed on the merits when he sought federal habeas relief.  Martin had filed a successive petition for habeas corpus in the California Supreme Court, raising a claim for ineffective assistance of counsel that he had failed to previously raise in his original state habeas petition. <u>Martin</u>, 131 S.Ct. at 1126. The California Supreme Court's order denying the petition read in its entirety: "Petition for writ of habeas corpus is DENIED. (<u>See In re Clark</u> (1993) 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729, <u>In re Robbins</u> (1998) 18 Cal.4th 770, 780, 77 Cal.Rptr.2d 153, 959 P.2d 311.)." <u>Id</u>.

The Supreme Court concluded that such a dismissal on timeliness grounds under California law represented an adequate and consistently applied independent state law bar such that Martin was precluded from bringing his federal claims in federal court. <u>Id</u>. at 1128–29; <u>see Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).]

d. <u>Conclusion</u>.

A state procedural bar that is both adequate and independent will be enforced by the federal court on habeas review unless Petitioner shows cause and prejudice or a fundamental miscarriage of justice.  <u>Harris</u>, 489 U.S. at 262; <u>Coleman</u>, 501 U.S. at 750.  In his Traverse, Petitioner has not put forward either contention.  Rather, while conceding that both the law governing a timely arraignment and that governing preliminary hearings are state law, Petitioner asserts merely that he was "unable to respond to the charges against him as he was unaware of the charges for nearly a year," that as a result, "[e]vidence was destroyed and/or lost," and that "[o]pportunities were waylaid."  (Doc. 30, p. 14).  However, such vague and generalized contentions are insufficient to establish either cause or prejudice.  Accordingly, the claim is barred in these proceedings.

E. <u>Failure to Subject Petitioner To A Timely Preliminary Examination</u>.

Next, Petitioner claims that his due process rights were violated when the state court failed to conduct a timely preliminary hearing.  This contention too is barred.

1. <u>The Superior Court's Decision</u>.

The Superior Court rejected Petitioner's claim as being procedurally barred on the same three

26

grounds as in the previous claim.

2. Analysis.

As with the previous claim, all three procedural bars are both independent and adequate.  In his Traverse, Petitioner fails to set forth a cognizable claim establishing either cause or prejudice. Accordingly, the claim is barred and will not be addressed on its merits in these proceedings. Harris, 489 U.S. at 262; Coleman, 501 U.S. at 750.

F. Ineffective Assistance Of Trial Counsel.

Finally, Petitioner claims that he was denied his Sixth Amendment right to the effective assistance of counsel.  As explained by the Superior Court's written decision rejecting this claim, Petitioner contends that trial counsel failed to conduct an adequate investigation, and that, if he had, he would have discovered the following: (1) the lack of an arraignment and timely preliminary hearing; (2) the failure to serve a valid arrest warrant for nearly nine months; (3) the fact that the complaint was stamped twice; and (4) that, under California Penal Code § 1417.9, the prosecution had a duty to retain biological evidence in connection with a criminal case and, considering the sale and demolition of the Lexus, this statute would have been violated.  (Doc. 14, pp. 91-92).  Again, Petitioner's contention is without merit.

1. The Superior Court's Ruling.

After discussing the standard of review for claims of ineffective assistance of counsel, the Superior Court rejected Petitioner's claim as follows:

> According to Petitioner, his trial counsel failed to conduct an independent investigation of the case and/or witnesses despite the payment of $3,000.00 to hire an independent defense investigator. [Citations omitted.] Petitioner admits that as an advocate his trial counsel was effective and tenacious, however, claims that an investigator would have been able to discover may [sic] instances of, "improper criminal procedure in the prosecution of Petitioner…The lack of an arraignment, the lack of a preliminary examination within the statutory time, the failure to serve a valid arrest warrant for nearly nine months, the twice-stamped Complaint; these are all facts that a competent investigator, on behalf of an effective trial advocate, would have discovered."  (Petition, 72.)  Petitioner opines that the early discovery of such matters would have led to the dismissal of the Complaint.  (Petition, 72-72.)  Petitioner also claims that the retention of an independent investigator would have led to counsel's discovery of California Penal Code Section 1417.9 and the prosecution's duty to retain biological evidence in connection with a criminal case.  (Petition, 73.)  Petitioner has not charged his appellate counsel with ineffective assistance.
>
> Petitioner's argument concerning California Penal Code Section 1417.9, is without merit.  The purpose of California Penal Code Section 1417.9 is to require government agencies to retain

secured biological material that may become the subject of a post conviction motion for DNA testing by those convicted of felonies.  (88 Ops. Cal. Atty. Gen. 77.)  The notice provisions set forth in Section 1417.9, subdivision (b)(1) do not speak in the voice of pre-trial notice, but rather post-conviction notice to, "any person who as a result of a felony conviction in the case is currently serving a term of imprisonment and who remains incarcerated in connection with the case, any counsel of record, the public defender in the county of conviction, the district attorney in the county of conviction, and the Attorney General."  (Emphasis added.)  Where pre-trial destruction of evidence and/or failure to preserve is at issue, it is the <u>Trombetta</u> and <u>Youngblood</u> standards which govern.  To accept Petitioner's interpretation of California Penal Code Section 1417.9 would be to eviscerate the "apparent exculpatory value" standard for preservation of evidence long-accepted by California state courts.  "The People [are] not obligated "to foresee everything the fertile mind of the defense counsel might wish to examine."  (<u>See, People v. McNeill</u> (1980) 112 Cal.App.3d 330, 338.)

In regards to Petitioner's claim that trial counsel prejudicially erred by not asserting an early challenge to his lack of a timely arraignment and/or preliminary hearing, it appears as follows:

      1.  The Complaint was filed on October 20, 2005;

      2.  On October 27, 2005, a warrant was issued for Petitioner's arrest in connection with this case;

      3.  Despite the fact that Petitioner was in custody of the California Department of Corrections and Rehabilitation on October 27, 2005 serving a twelve month parole violation term, the warrant was not served until August 15, 2006;

      4.  Petitioner was taken into custody in connection with this case on August 16, 2006;

      5.  Petitioner was arraigned on the Complaint on August 17, 2006; and

      6.  Petitioner's preliminary hearing in connection with the Complaint occurred on September 6, 2006.  The original preliminary hearing date of August 29, 2006 was continued to September 6, 2006 following Defendant's August 23, 2006 waiver of time for the setting of the preliminary hearing.

To the extent that the continuances in the preliminary hearing date which occurred beginning on August 22, 2006 were in order to facilitate his stated wish to discharge court-appointed counsel in favor of his retention of a private attorney, Petitioner cannot now be heard to complain about his private attorney's failure to object to the setting of the preliminary hearing within ten (10) court days of his August 17, 2006 arraignment.  Petitioner was arraigned within ten (10) court days of August 23, 2006 as agreed, and within 60 days of his August 17, 2006 arraignment in accord with California Penal Code section 859b.

As to whether Petitioner's trial counsel erred in failing to mount an early objection to the timing of his arraignment, the court also finds in the negative.  Petitioner was not arrested in connection with the Complaint until August 16, 2006.  Prior to such time, he was in custody in connection with his Parole Violation term.  On its face, the timing of Petitioner's arraignment met all statutory requirements for the same.  Further, although it is correct that destruction of the vehicle occurred in June 2006, there appears to be no prejudice in trial counsel's failure to specifically challenge the delay in arraignment.  Ultimately, the CHP and District Attorney's Office were found by both the trial and appellate courts to have acted without bad faith and in accord with established <u>Trombetta</u> and <u>Youngblood</u> standards.  It is therefore purely speculation by Petitioner that the trial court would have found any delay in the arraignment to have resulted in a denial of due process sufficient to support an early dismissal of the Complaint with prejudice.  The court notes that Petitioner does not specifically explain how the

trial would have been different had the Complaint been dismissed without prejudice and re-filed.

The alleged destruction of the statements of Ms. Contreras and Mr. Tony is an equally unavailing basis for habeas corpus relief.  The Opinion issued by the California Court of Appeal, Fifth Appellate District confirms that Mr. Tony told trial counsel upon investigation that he had not given a statement to any individual regarding the accident.  In addition, in his supporting declaration trial counsel stated that neither Mr. Tony nor Ms. Contreras mentioned during their interviews the existence of the handwritten statements regarding which Petitioner complains.  It is unclear, then, how earlier arraignment in this case would somehow have led to the discovery of statements which the authors did not themselves remember making until after the entry of the verdict in this case.  Moreover, as recognized by the California Court of Appeal, Fifth Appellate District, "…the newly discovered evidence does not undermine or reduce the probative value of the People's proof that appellant was driving the Lexus when the accident occurred…When the entirety of the circumstantial evidence is evaluated, it provides compelling proof that appellant was the driver."

(LD 22, pp. 2-5).

　　　　　　　2.   Federal Standard.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

29

unreasonably applied this general <u>Strickland</u> standard for ineffective assistance. <u>Knowles v. Mirzayance</u>, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles v. Mirzayance</u>, 556 U.S. ___, 129 S.Ct. at 1420. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003). Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

The state court expressly identified and applied the appropriate federal standard by referencing <u>Strickland</u>. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of <u>Strickland</u>. For the reasons discussed below, the Court concludes that it was not.

### 3. <u>Analysis</u>.

Petitioner failed to establish either defective performance by trial counsel or prejudice. Regarding the purported lack of a timely arraignment and preliminary hearing, the Superior Court concluded, applying California law, that the procedural anomalies relied upon by Petitioner did not violate state law. (LD 22, pp. 4-5). Moreover, the Superior Court rejected Petitioner's claim that an adequate investigation and further legal research would have uncovered California Penal Section § 1417.9, regarding a prosecutor's duty to retain evidence, concluding that the statute applied to post-conviction motions for DNA testing by those convicted of felonies, not pre-trial <u>Trombetta</u> motions. (LD 22, p. 3).

Insofar as the Superior Court's decision was based upon the state court's analysis and application of California law, this Court is bound by a state court's determination and application of its own laws. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir. 1989). Insofar as Petitioner's

1    claim is premised upon a federal constitutional violation, Petitioner has failed to show how these

2    technical procedural issues would rise to the level of a federal due process violation.

3            Most importantly, however, Petitioner has failed to show how, even if trial counsel's

4    performance could be characterized as technically deficient, he was prejudiced in any way by such

5    defects in state trial procedure.  As both Respondent and the Superior Court point out, the complaint

6    could have been re-filed and the prosecution could have proceeded with the prosecution, thus

7    precluding any possible benefit Petitioner might contend he would have obtained if trial counsel had,

8    originally, conducted a proper investigation, detected these procedural anomalies, objected to them, and

9    obtained dismissal of the original complaint. Although the first amended petition boldly asserts,

10   without any citation to fact or law, that the "outcome of the case would have been different" had the

11   trial court dismissed the case without prejudice and the prosecutor re-filed it (Doc. 14, p. 92), such a

12   self-serving statement, without any reason or evidence to support it, falls far short of an adequate

13   showing of prejudice under Strickland.

14           Regarding the destruction of the statements by Ms. Contreras and Mr. Tony, the Superior Court

15   pointed out that, even had trial counsel somehow conducted a thorough investigation into the timeliness

16   of the arraignment and preliminary hearing, it is unclear how such an investigation would have

17   uncovered evidence of statements by those two witnesses when neither witness remembered giving

18   those written statements until after trial.  (LD 22, p. 5).

19           Regarding the destruction of the vehicle, the Court has already considered at length and in

20   various contexts whether Petitioner was prejudiced by the release and sale of the Lexus and concluded

21   that the state court's rejection of this claim was not objectively unreasonable.  Without any deficient

22   performance on the part of trial counsel regarding the circumstances of the vehicle's release and

23   subsequent destruction, and absent any proof whatever of actual prejudice, Petitioner's Strickland claim

24   as to the vehicle must be rejected.  In sum, Petitioner has failed to show that any of his claims for relief

25   have merit.  Accordingly, the Court will deny the petition with prejudice.

26           Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a

27   writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and

28   an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## **ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1.  The first amended petition for writ of habeas corpus (Doc. 14), is DENIED with prejudice;

32

2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

3.  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   __**June 3, 2014**__                    ____**/s/ Jennifer L. Thurston**____
UNITED STATES MAGISTRATE JUDGE